UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| KEVIN JORDAN, | ) ) ) | No. 19 CV _____ (____) |
| Plaintiff, | ) ) | |
| - against - | ) ) | COMPLAINT |
| VIACOM INTERNATIONAL INC, | ) ) ) | JURY TRIAL REQUESTED |
| Defendant. | ) ) | |

_____)

Plaintiff Kevin Jordan, by his attorneys, Alterman & Boop LLP and Eisenberg & Schnell

LLP, as and for his Complaint against Defendant Viacom International Inc. alleges as follows:

NATURE OF THE ACTION

1.      Plaintiff Kevin Jordan, a highly skilled African-American advertising executive,

was employed by Defendant Viacom International Inc. ("Viacom") in its media networks

business unit as Vice President, Brand Creative Director of its VH1 network. Although Mr.

Jordan was very successful in his work for Viacom, white employees with no understanding of

VHI's audience and programming were placed above him and Mr. Jordan was deprived of staff

and resources.  Almost every employment action taken during Mr. Jordan's employment with

Viacom showed Viacom leadership's preference for its struggling MTV network with its white

employees over the thriving African American VH1 brand and the people of color who brought

about its success. After Mr. Jordan complained about race discrimination in November 2017,

Viacom retaliated against him and terminated his employment in February 2018.

2.      Plaintiff brings this action to remedy discrimination on the basis of race, in the

terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York City Human Rights Law

("NYCHRL" or the "City law"), Administrative Code of the City of New York §§ 8-101 et seq.

and to remedy discrimination on the basis of his race in violation of Civil Rights Act of 1866, 42

U.S.C. §1981, as amended by the Civil Rights Act of 1991 (§1981). Plaintiff also brings this

action to remedy Viacom's retaliation against him after he engaged in activity protected under

Federal and City law.  In doing so, Defendant acted in violation of Title VII, 42 U.S.C. § 2000e-

3(a), §1981 and the NYCHRL, N.Y.C. Admin. Code § 8-107(7).

3.       Plaintiff seeks injunctive and declaratory relief, compensatory, punitive, and

liquidated damages, attorney's fees and costs, and any other appropriate legal and equitable

remedies available under §1981, Title VII and City law.

JURISDICTION, VENUE AND<br>ADMINISTRATIVE EXHAUSTION

4.       This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

1331, 28 U.S.C. § 1343(a) (4), and 42 U.S.C. § 2000e-5(f) (3).

5.       This Court has jurisdiction over Plaintiff's City law claim pursuant to 28 U.S.C. §

1332, as there exists complete diversity of citizenship between Plaintiff and Defendant and the

amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest

and costs.

6.       Because the events giving rise to this action took place in the Southern District of

New York, venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-

5(f)(3).

7.       Plaintiff timely filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC"), on May 4, 2018. On or about February 13, 2019, the EEOC

issued Mr. Jordan a Notice of Right to Sue, which was mailed on or about February 14, 2019, and received on February 20, 2019. This Complaint is timely filed thereafter.

8.      Pursuant to §8-502(c) of the NYCHRL, plaintiff will serve this Complaint on the New York City Commission on Human Rights and on the City of New York Corporation Counsel.

## PARTIES

9.      Plaintiff Kevin Jordan is an African American male with over twenty years of experience working in the advertising industry. He was employed by Defendant Viacom as Vice President, Brand Creative Director for its VH1 network from August 2016 until his employment was terminated in February 2018.  Mr. Jordan is a resident of California.

10.     Defendant Viacom International Inc. ("Viacom") is an entertainment content company. Viacom is a Delaware corporation with its principal places of business in New York City, New York.

11.     Viacom was Mr. Jordan's employer within the meaning of Title VII and the City law.

## FACTUAL ALLEGATIONS

12.     In August 2016, Viacom recruited and hired Mr. Jordan to play a leading role in the re-branding of its VHI network, which was undergoing a transformation. Mr. Jordan is highly experienced in the industry and he has received many awards during his stellar career, including the Cannes Lions International, the International Andy Gold and Clio Gold Awards, the One Show, and the London Advertising Award.

13.     Mr. Jordan was recruited to steer VH1's creative department – consisting of writers, producers, and design/graphics professionals –  and to rebrand VH1 in its mission to

broaden the network's appeal among its target audience, which is predominantly African American and female.

14.     Chris McCarthy, at that time the General Manager of VH1 and Logo, a Viacom network aimed primarily at an LGBTQ audience, and Amy Campbell, Senior Vice President, persuaded Mr. Jordan to take the job.  They told him they were looking for someone who knew the culture of the network's target audience.

15.     Mr. Jordan began his employment with Viacom in August 2016 reporting to Ms. Campbell and Mr. McCarthy. Upon information and belief, at that time there was only one other African American creative VP in senior management at VH1.  This under-representation was inexplicable in light of the cultural focus of the network – black urban memes, slang, iconography and hip hop – and its primarily African American audience.

16.     In the fall of 2016 Mr. Jordan created promotions for the successful launches of Martha and Snoop's Potluck Dinner Party (M&S), America's Next Top Model (ANTM), Hip Hop Squares, and The Breaks.  M&S and Hip Hop Squares had spectacular ratings for their debut episodes and became recognized hits for VH1.

17.     Mr. Jordan received frequent praise for his work from Mr. McCarthy, Ms. Campbell and other managers.  In January 2017, successful marketing campaigns were launched for Basketball Wives ("BW"), Love and Hip Hop ("L&HH") New York, L&HH Hollywood and L&HH Atlanta. Black Ink Crew Chicago had its highest rated premiere in July 2017.  All were backed by promotional campaigns Mr. Jordan led and created.

18.      An ad campaign Mr. Jordan developed for the December 6, 2017 launch of Black Ink Crew New York resulted in the highest-rated Wednesday premiere in network history. The January 2018 launch of L&HH Miami exceeded its rating expectations.  The second season of

4

ANTM, launched in December 2017, also exceeded expectations.   Mr. Jordan's warmly provocative promotional spot for the second season of M&S – called "Martha and Snoop Ghost" – generated eager press attention from Vogue, USA Today, Entertainment Weekly, the Huffington Post, People magazine, W, and Parade among many others.

19.     In or about October 2016, Mr. McCarthy was promoted to President of VH1, MTV. In or about January 2017, Jane Olson, a white woman, who by her own admission did not watch VH1 programs and was unfamiliar with the programming culture and audience, was hired by Viacom as Senior Vice President of VH1 and Logo and inserted above Mr. Jordan in the management hierarchy. Although Mr. McCarthy told Mr. Jordan that Ms. Olson was hired to help him manage business issues not to make creative decisions, Mr. Jordan soon found himself answering to Ms. Olson on creative decisions.

20.     In or about late January 2017 another white woman, Jacqueline Parkes, who had been hired as CMO of MTV in 2016 and who also had no knowledge or understanding of VH1's programs or its audience, was named the Chief Marketing Officer of VH1, Logo and MTV. Mr. Jordan began reporting to Ms. Olson who reported to Ms. Parkes, another layer of white management over him and the VH1 brand.

21.     On or about May 31, 2017, the only African American woman among the writer/producers on Mr. Jordan's team was fired with no input from him or any notice to him.

22.     In or about July 2017, Ms. Parkes appointed a white woman Sarah DeFilipis to lead the digital/social department of the three networks, over a senior, more qualified and experienced African American man.

23.     Despite Mr. Jordan's proven success and his knowledge of VHI's audience and programming as one of only two African America VP creatives in the entirety of VH1, MTV and

Logo– and despite VH1's status as one of the few successful Viacom networks and one of the top-performing networks in the cable industry – under the management of Ms. Olson and then, after she abruptly left Viacom in the spring of 2017, Ms. Parkes, his role was increasingly marginalized.

24.     In or about June 2017 a white male, Jesse Raker, was brought in by Ms. Parkes as a Vice President and given Mr. Jordan's re-branding project as well as much of his team.  By the summer of 2017 the team Mr. Jordan supervised shrank from more than thirty (30) full-time and part-time professionals, to no more than four part-time freelancers, and he was not permitted to hire replacements.

25.     On November 21, 2017, Mr. Jordan met with Ms. Parkes and she informed him that he had done "such a good job that year" that he would receive most of his targeted Short-Term Incentive Plan ("STIP") and that she was giving him a higher percentage than she had awarded to any other employee.  Mr. Jordan told her that based on his success he deserved the full STIP.  She then justified not giving him the full STIP by bringing up untrue, vague and inconsistent "complaints" that had been made about his "management style" over six months earlier

26.     The denial of his full STIP was the last straw for Mr. Jordan.  Mr. Jordan met with Nancy Newman, Senior Vice President of Human Resources, on November 27, 2017, and complained to her about race discrimination at Viacom.

27.     Mr. Jordan complained to Ms. Newman that all of the promotions to senior management at MTV, VH1 and Logo had had gone to white employees and none of the many promotions to senior management at MTV, VH1 and Logo as well as new hires had gone to people of color. Mr. Jordan questioned whether there was opportunity for people of color to

advance at Viacom. He told her he had heard from other persons of color that there was no opportunity for minorities to advance at VH1 and Viacom. He stated that there was a glass ceiling for people of color at Viacom. Mr. Jordan emphasized the incongruity of people who did not understand the target audience of VH1 being positioned over him to supervise him and his department. He told her that he did not want yet another white Senior Vice President who did not know anything about the network or the culture placed above him.

28.     Mr. Jordan complained to Ms. Newman about being denied his full STIP and told her that based in his objective performance he earned the full bonus.

29.     Mr. Jordan also complained to Ms. Newman about the disrespectful treatment he had received from Ms. Parkes regarding a shoot in Miami in August 2017 and told her that he considered Ms. Parkes's behavior abusive.

30.     After Mr. Jordan's complaint to Ms. Newman, his responsibilities and role were further diminished by Ms. Parkes.

31.     On or about December 12, 2017, just a few weeks after Ms. Parkes told Mr. Jordan he had done a good job and just days after the higher-than-anticipated response to ANTM and the record-breaking premiere of Black Ink Crew New York, Mr. Jordan met with Ms. Parkes for a performance review.  Less than a month after Ms. Parkes had praised his work, Ms. Parkes now told him he was no longer worth the money was being paid.

32.     On February 6, 2018, Mr. Jordan was called into a meeting with Ms. Parkes.  Ms. Parkes informed him that his position was being eliminated due to a "re-org."  No other explanation was given.  Two of the four people fired from the creative and production department in the "re-org" were the only senior African American employees left in the department.

33.     Within days of the termination of Mr. Jordan's employment, Justin Russell, the white VP Creative Director of the struggling MTV, was promoted to Senior Vice President. He and his white supervisor, Thomas Berger, also at MTV, took over running the Creative Departments of all three channels.

34.     Upon information and belief, after Mr. Jordan was fired there were no African Americans at the level of Vice President or higher in the Marketing Department of the entire three-network entity.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
(Title VII — Race Discrimination)

35.     Plaintiff repeats and realleges paragraphs 1 through 34 as if such paragraphs were fully set forth herein.

36.     By the acts and practices described above, Defendant intentionally discriminated against Mr. Jordan on the basis of race, in violation of Title VII of the Civil Rights of 1964.

37.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

38.     Defendant acted with malice and/or reckless indifference to plaintiffs federally protected rights.

SECOND CLAIM FOR RELIEF
(§ 1981 -Race Discrimination)

39.     Plaintiff repeats and realleges paragraphs 1 through 38 as if such paragraphs were fully set forth herein.

40.     By the acts and practices described above, Defendant intentionally discriminated against Mr. Jordan on the basis of race in violation of 42 U.S.C. §1981(a).

41.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

42.     Defendant acted with malice and/or reckless indifference to plaintiffs federally protected rights.

### THIRD CLAIM FOR RELIEF
#### (NYCHRL — Race Discrimination)

43.     Plaintiff repeats and realleges paragraphs 1 through 42 as if such paragraphs were fully set forth herein.

44.     By the acts and practices described above, Defendant intentionally discriminated against Mr. Jordan because he is African American, constituting discrimination based on race in violation of the NYCHRL, Administrative Code of the City of New York § 8-101 et seq.

45.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

46.     Defendant's unlawful and discriminatory conduct constitutes willful or wanton negligence, or recklessness, or a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard in violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF
#### (TITLE VII — Retaliation for Complaints of Race Discrimination)

47.     Plaintiff repeats and realleges paragraphs 1 through 46 as if such paragraphs were fully set forth herein.

48.     By the acts and practices described above, Viacom has retaliated against plaintiff for his opposition to Defendant's unlawful employment practices, in violation of Title VII.

49.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

50.     Defendant knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Mr. Jordan's protected rights.

FIFTH CLAIM FOR RELIEF
( §1981 — Retaliation for Complaints of Race Discrimination)

51.     Plaintiff repeats and realleges paragraphs 1 through 50 as if such paragraphs were fully set forth herein.

52.     By the acts and practices described above, Viacom has retaliated against plaintiff for his opposition to Defendant's unlawful employment practices, in violation of 42 U.S.C. §1981(a).

53.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

54.     Defendant knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Mr. Jordan's protected rights.

SIXTH CLAIM FOR RELIEF
(NYCHRL — Retaliation for Complaints of Race Discrimination)

55.     Plaintiff repeats and realleges paragraphs 1 through 54 as if such paragraphs were fully set forth herein.

56.     Defendant has retaliated against Plaintiff, in violation of § 8-107(7) of the NYCHRL, because of his complaints of race and color discrimination.

57.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, emotional distress and other compensable damages.

58.     Defendant knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Mr. Jordan's protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court exercise jurisdiction and enter a Judgment:

(a)     declaring that Defendant's conduct complained of herein violates Plaintiff's rights under the Title VII, §1981, and the City Law;

(b)     enjoining and permanently restraining Defendant from violating Title VII, §1981 and the City Law;

(c)     directing Defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

(d)     directing Defendant to reinstate plaintiff to the position he would have occupied but for Defendant's discriminatory and otherwise unlawful conduct and making him whole for all earnings and other benefits he would have received but for Defendant's discriminatory treatment including, but not limited to back pay, wages and other lost perquisites and employment benefits in amounts to be determined at trial;

(e)     directing Defendant to pay compensatory damages including damages for emotional distress, humiliation and pain and suffering;

(f)     directing Defendant to pay pre-judgment and post-judgment interest;

(g)     directing Defendant to pay punitive damages;

11

(h)     directing Defendant to pay reasonable attorney's fees and costs incurred in the prosecution of this action; and

(i)     granting such other legal and equitable relief as this Court deems appropriate and just.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Jordan demands a trial by jury in this action.

Dated: New York, New York          Respectfully submitted,
        May 17, 2019


                                            /s/
                                  _____
                                  Laura S. Schnell
                                  lschnell@eisenbergschnell.com
                                  Christopher Pacelle
                                  cpacelle@eisenbergschnell.com
                                  Eisenberg & Schnell LLP
                                  233 Broadway, Suite 2704
                                  New York, NY 10279
                                  Ph. #:  212-966-8900
                                  *Attorneys for Plaintiff*


                                  Arlene F. Boop
                                  aboop@altermanboop.com
                                  Alterman & Boop LLP
                                  99 Hudson St #8L
                                  New York, NY 10013
                                  Ph. #:  (212) 226-2800
                                  *Attorneys for Plaintiff*